FILED
2021 Aug-23  PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **MICHELLE BEASLEY, Individually and on behalf of all those similarly situated teachers employed by the Tuscaloosa County School System,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **CASE NO. C7:21-CV-890-LSC** |
| **TUSCALOOSA COUNTY SCHOOL SYSTEM, et al.** | ) ) ) | |
| **Defendants.** | ) ) | |

## DEFENDANTS JOHNSON AND HIGDON'S MOTION TO DISMISS

COME NOW Defendants Keri Johnson and Danny Higdon and respectfully move the Court to dismiss all claims against these Defendants.  As grounds, the Defendants show as follows:

## INTRODUCTION

Plaintiff Michelle Beasley filed this case on her own behalf and purportedly on behalf of similarly situated teachers employed by the Tuscaloosa County School System (TCSS or Board) against the Tuscaloosa County Board of Education, all Board members individually and Superintendent Dr. Keri Johnson and Chief School Financial Officer Danny Higdon.  The Complaint states eight counts.  Count 1 alleges

denial of due process under the Constitution of the State of Alabama.  Count 2 claims

denial of due process under the United States Constitution.  Count 3 alleges a claim

under 42 U.S.C. § 1983 for alleged violation of Fifth and Fourteenth Amendment

rights.  Count 4 claims breach of contract under Alabama law.  Count 5 claims

violation of the Alabama Students First Act, § 16-24C-1, *et seq.*, Code of Alabama

(1975).  Count 6 seeks a writ of mandamus to compel the Defendants to perform

purported ministerial and legal duties.  Count 7 requests declaratory, injunctive and

equitable relief.  Count 8 claims violation of Title VII of the Civil Rights Act of 1964.

All counts are against all Defendants and against Dr. Johnson and Mr. Higdon in both

their official and individual capacities.  Based on the following reasons and

authorities, all claims against Dr. Johnson and Mr. Higdon are due to be dismissed.[1]

## I.   Official Capacity Claims Against The Defendants Are Equivalent To Claims Against The Tuscaloosa County Board of Education And Are Unnecessary.

Keri Johnson and Danny Higdon are named in both their individual and official

capacities.  Dr. Johnson is superintendent of TCSS and Mr. Higdon is the Chief

School Financial Officer. (Doc. 1, pp. 2, 3)[2]  The Plaintiff acknowledges TCSS is a

---

[1]  The Defendants have referred in their arguments to claims by Plaintiff Michelle Beasley. However their arguments are intended to address and apply equally to the claims on behalf of purported class members.

[2]  Mr. Higdon retired as CSFO on April 30, 2020 and returned May 1, 2021.  He was not employed by the TCBOE at any time relevant to the Plaintiff's claims. Mr. Higdon will file a separate motion for summary judgment on that basis.

2

governmental entity.  (Doc. 1, p. 5 ¶ 5).  The claims against the Defendants in their official capacities, including those under 42 U.S.C. § 1983 and Title VII, are duplicative of the claims against TCSS, unnecessary and are due to be dismissed.

The Eleventh Circuit Court explained in *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991):

> In contrast to individual capacity suits, when an officer is sued under Section 1983 in his or her official capacity, the suit is simply "'another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. at 165, 105 S. Ct. at 3105 (citing *Monell v. Department of Social Servs*., 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 2035 n. 55, 56 L. Ed. 2d 611 (1978)). Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents.
> . . .
>
> Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials.

*Id*. at 776.  *See also Katherine S. v. Umbach*:

> When individual school administrators are sued in their official capacities, they are considered officers of the board of education. See *Godby v. Montgomery County Board of Educ*., 996 F. Supp. 1390, 1403 (M.D.Ala.1998). 'Section 1983[c]laims against officers in their official capacity are "functionally equivalent" to claims against the entity that they represent' *Id*. (quoting *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991)). Thus, the plaintiffs' claims under § 1983 against both the Auburn City Schools and individual administrators in their official capacities are redundant.

No. CIV.A. 00-T-982-E, 2002 WL 226697, at *18 (M.D. Ala. Feb. 1, 2002) (Order granting motion for summary judgment.)

The Eleventh Circuit Court noted in *Busby v. Orlando* that to keep both a government agency and its officers sued in their official capacity as defendants in a case would be "redundant and possibly confusing" to the fact finder. 931 F. 2d at 776. The Court also noted, "the proper method for a plaintiff to recover under Title VII is by suing *the employer*, either by naming the supervisory employees as agents of the employer *or* by naming the employer directly." 931 F.2d at 772 (emphasis added). The clear implication is that official capacity claims against officers of an entity under Title VII also are redundant and unnecessary where, as here, the entity itself is a defendant.  This Court recognized as much in *Jones v. Bessemer Bd. of Educ.*, No. 2:20-CV-00044-LSC, 2020 WL 3440482, at *3 (N.D. Ala. June 23, 2020), stating as to a Title VII claim, "the official capacity claim should be dismissed as 'redundant' of the claims against the Board and 'possibly confusing to the jury'." Clear precedents in the 11th Circuit require dismissal of all official capacity claims against Dr. Johnson and Mr. Higdon.

## II.   **There Is No Individual Liability Under Title VII For The Claims In Count 8.**

Like official capacity claims under 42 U.S.C. § 1983 and Title VII, "[i]ndividual capacity suits under Title VII are similarly inappropriate. The relief

4

granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act." *Busby,* 931 F. 2d at 772 (emphasis in original). *See also Hinson v. Clinch Cty., Georgia Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000)(same). The 11th Circuit noted in *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056 (11th Cir. 1992), "both this court and the Fifth Circuit have held that Title VII actions are not appropriately brought against government officials in their personal capacities. Such suits may be brought only against individuals in their official capacity and/or the employing entity." *Id*. at 1060.   In *Weissenbach v. Tuscaloosa Cty. Sch. Sys.*, No. 7:17-CV-001642-LSC, 2018 WL 5848047, at *8 (N.D. Ala. Nov. 8, 2018) this Court observed "[c]ourts throughout this Circuit have routinely dismissed official capacity claims against individual defendants when the entity that individual represents has also been named a defendant for the same alleged violation. *See M.R. v. Bd. of Sch. Comm'rs of Mobile Cty.*, Civil Action No. 11-0245-WS-C, 2012 WL 2931263 at *2 n.5 (S.D. Ala. July 18, 2012) (collecting cases)." Neither Dr. Johnson nor Mr. Higdon are the Plaintiff's employer, and the actual employer, TCSS, is also a defendant, so the Title VII claim against Dr. Johnson and Mr. Higdon (Count 8) must be dismissed in both their official and individual capacities.

5

III.   **Official Capacity Claims Under State Law Are Barred By State Immunity.**

Counts 1, 4, 5 and 6 purport to state claims under Alabama law against the Defendants in their official and individual capacities. This Court recently held in another case that state-law claims against a public school official in an official capacity are barred by sovereign immunity:

> Section 14 of Alabama's constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14. This provision extends "absolute immunity from suit—and thus liability—for monetary damages based on state-law claims, not only for the State but also for State officials acting in their official capacities." *Ala. State Univ. v. Danley*, 212 So. 3d 112, 124 (Ala. 2016) (citing *Ex Parte Trawick*, 959 So. 2d 51, 55 (Ala. 2006)). . . . Alabama's county school boards, after all, "are local agencies of the State and partake of the State's sovereign immunity." *L.S.B. v. Howard*, 659 So. 2d 43, 44 (Ala. 1995); see *Carroll ex rel. Slaught v. Hammett*, 744 So. 2d 906, 910 (Ala. 1999) ("County boards of education are deemed to be local agencies of the State for purposes of applying the State's sovereign immunity under Art. I, § 14, of the Constitution of Alabama of 1901.").

*D.C. v. Bibbs*, No. 7:20-CV-01105-LSC, 2021 WL 1910064, at *2 (N.D. Ala. May 12, 2021). The Court ruled that "[u]nder well-established Alabama case law, [the defendant] is cloaked with sovereign immunity to the extent [the plaintiff] seeks money damages against her in her official capacity." *Id.* All official-capacity state-law claims are therefore due to be dismissed.

Dr. Johnson and Mr. Higdon also are entitled to dismissal of all state law claims against them in their individual capacities on grounds of State-agent immunity. "Article I, §14, Ala. Const. (1901), provides 'That the State of Alabama shall not be made a defendant in any court of law or equity.' This is the basis for the doctrine of sovereign immunity." *Louviere v. Mobile County Bd. of Educ.,* 670 So. 2d 873, 877 (Ala. 1995) "County boards of education are not agencies of the counties, but local agencies of the state ... . Therefore, they partake of the state's immunity from suit... ." *Hutt v. Etowah County Bd. Of Educ.*, 454 So. 2d 973, 974 (Ala. 1984). "Thus, a person who acts as an agent of a county board of education shares in the State's sovereign immunity if the act complained of was committed while that person was performing a discretionary act." *Carroll v. Hammett*, 744 So. 2d 906, 910 (Ala. 1999).

The Alabama Supreme Court held in *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000):

> A state agent ***shall*** be immune from civil liability when the conduct made the basis of the claims against the agent is based upon the agent's
> . . .
> (2) exercising his or her judgment in . . . (d) hiring, firing, transferring, assigning, or supervising personnel; or
> . . .
> (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

*Id.* at 405. (Emphasis in original). "*Cranman* states categories, but does not purport to set forth an exhaustive list of activities falling within each category." *Howard v. City of Atmore*, 887 So. 2d 201, 206 (Ala. 2003).[3]

"*Ex parte Cranman* provides that an agent of the State is protected from liability for decisions made while exercising his or her judgment in the administration of a department or agency of the State when assigning or supervising personnel. 792 So.2d at 405." *Ex parte Trottman*, 965 So. 2d 780, 786 (Ala. 2007)(also citing *Hill v. Allen*, 495 So.2d 32 (Ala.1986)). *See also Ex parte Spivey*, 846 So. 2d 322, 331 (Ala. 2002) ("A State agent is also immune from civil liability for exercising judgment in supervising personnel"); and *Nance v. Matthews*, 622 So. 2d 297, 301 (holding that personnel training and supervision "require constant decision making and judgment on the part of the supervisor or trainer.") All of Beasley's claims against Dr. Johnson and Mr. Higdon relate to supervising and assigning duties to TCSS personnel. Everything they are alleged to have done, or failed to do, is within the categories of professional conduct that the Alabama Supreme Court has repeatedly held to be protected by State-agent immunity. Although the Complaint

---

[3] In cases decided before *Ex parte Cranman*, immunity analysis focused on whether the state employee's actions were "discretionary functions" protected by immunity, or "ministerial duties" that were not entitled to immunity protection. In *Cranman*, the Alabama Supreme Court abandoned the discretionary-versus-ministerial-function test as well as the term "discretionary function immunity," and adopted restated standards and the term "State-agent immunity." See *Ex parte Turner*, 840 So. 2d 132, 134 n.1 (Ala. 2002).

recites exceptions to State-agent immunity, there are no facts alleged that, if proved, would show the Defendants acted "wilfully, maliciously, fraudulently, in bad faith, beyond their authority or under a mistaken interpretation of the law." *See Cranman*, 792 So. 2d at 405. "'[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.' *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir.2003) (quoting *Marsh v. Butler County, Ala*., 268 F.3d 1014, 1036 n. 16 (11th Cir.2001)). And, 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." ' *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (quoting Fed.R.Civ.P. 8(a)(2))." *Jones v. Buckner*, 963 F. Supp. 2d 1267, 1273 (N.D. Ala. 2013). The Defendants are therefore entitled to State-agent immunity and dismissal of all claims against them in their individual capacities.

## IV.   There Is No Cause Of Action For Violation Of The Alabama Constitution Alleged In Count 1.

Count 1 purports to state a claim against the Defendants for "denial of due process under the Alabama Constitution." (Doc. 1, p. 35). However, the Plaintiff has

not identified any statutory or other mechanism for asserting this claim.[4]   The

Alabama Supreme Court has stated it is aware of no authority that recognizes a

private cause of action for monetary damages based on violations of provisions of the

Alabama Constitution.  See *Matthews v. Alabama A&M University,* 787 So. 2d 691,

698 (Ala. 2000).  The Middle District observed the same in *Ross v. State of Alabama*,

893 F. Supp. 1545, 1555 (M.D. Ala. 1995):

> The Court has concerns as to whether a Plaintiff may bring an action
> against a state employee in his or her individual capacity and seek
> monetary relief for violations of state *constitutional* law.  In essence, the
> plaintiffs are alleging constitutional violations by private individuals
> and, thus, do not implicate state action.  The Court has been unable to
> find an enabling statute equivalent to 42 U.S.C. § 1983 or any case law
> providing that such a cause of actions exists.

*Id*. at 1555.  Because there is no cause of action for "violation of the Alabama

Constitution," Count 1 is due to be dismissed.

## V.   Individual Capacity Claims Against The Defendants For Injunctive Relief Are Due To Be Dismissed.

The Complaint includes claims for declaratory, injunctive and equitable relief.

(Count 7, Doc. 1, p. 84, *et seq*.)  Claims for injunctive relief against the Defendants

in their individual capacities fail to state grounds for relief because  only the state

---

[4]   Count 1 refers to procedural protections for teachers under the Alabama Students First
Act, specifically § 16-24C-7, Ala. Code.  However, to the extent the Plaintiff is attempting to bring
her state constitutional claim under the Students First Act, that section of the Act provides only a
mechanism for challenging job transfers and reassignments and neither it nor any other section of
the Act allows damages or the other relief sought by Beasley.

agency, TCSS, and not officials or employees of the Board individually, has authority to provide injunctive relief. This Court has held that similar claims for injunctive relief against state officials in their individual capacities were due to be dismissed:

> Plaintiff seeks declaratory and injunctive relief under § 1983 to end continuing violations of his federal rights and prevent future violations of his federal rights. However, state officers may only be sued in their individual capacity for money damages under the statute. See *Brown v. Montoya*, 662 F.3d 1152, 1161 n. 5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.") (citing *Hafer v. Melo*, 502 U.S. 21, 30, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)); *Greenawalt v. Indiana Dep't of Corrections*, 397 F.3d 587, 589 (7th Cir. 2005) (noting that § 1983 does not permit injunctive relief against state officials sued in their individual capacity). Accordingly, Plaintiff's § 1983 claims for equitable relief against Fields and Thompson in their individual capacity are due to be dismissed.

*Jones v. Buckner*, 963 F. Supp. 2d 1267, 1281 (N.D. Ala. 2013).

Individual capacity injunctive-relief claims against Dr. Johnson or Mr. Higdon are inappropriate also because even if they had taken some action affecting the terms or conditions of the Plaintiff's employment, they could have done so only by virtue of their official positions with the TCSS. *See Ex parte Dickson*, 46 So. 3d 468, 474 (Ala. 2010) ("State officials act for and represent the State *only in their official capacities*.") (Emphasis in original). *See also Page v. Hicks*, No. 2:16-CV-01993-KOB, 2018 WL 828770, at *4 (N.D. Ala. Feb. 12, 2018) (order granting motions to dismiss), *aff'd*., 773 Fed. Appx. 514 (11th Cir. 2019) (same). In

their individual capacities, these Defendants had no ability to alter the Plaintiff's employment.  Under Alabama law, a school superintendent can only recommend personnel actions to the Board of Education, which has sole authority for personnel changes.  See § 16-8-23, § 16-9-23, Ala. Code.  The 11th Circuit held in *Minnifield v. City of Birmingham Police Dept.*, 791 Fed. Appx. 86 (11th Cir. 2019) that such "recommendations 'up the chain of command' for consideration by those with ultimate hiring authority" are within the scope of a public official's duties.  *Id.* at 91, (citing *Harbert International, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) ("a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties."))  The Southern District of Florida noted:

> An issue remains, however, concerning whether injunctive relief can be sought against a defendant in his individual capacity if the act must be in his official capacity to have official consequences. The Court finds the answer to be no. . . . Even if the Court could compel Bayer to act in his individual capacity, the compelled action would have no official consequences. The only decision the Court has found on point agrees. The District Court of the Eastern District of Pennsylvania wrote, '[w]e do not see how a court can order an officer in his personal capacity to take an official act.' *Barrish v. Cappy*, No. 06-837, 2006 U.S. Dist. LEXIS 19954, 2006 WL 999974, at *4 (E.D. Pa.. Apr. 17, 2006). Accordingly, Evans's demand for an injunction is DISMISSED WITHOUT PREJUDICE.

*Evans v. Bayer*, 684 F. Supp. 2d 1365, 1369 (S.D. Fla. 2010) (capitalization in

original).  Here, if Dr. Johnson were ordered to recommend some action ultimately to be taken by the TCSS Board, only if she did so in her official capacity could the recommendation have official consequences.  Because neither Dr. Johnson nor Mr. Higdon has authority individually to afford injunctive relief if it were ordered, all claims against them seeking injunctive relief must be dismissed.

## VI.   The Defendants Are Entitled To Qualified Immunity On All Federal Claims (Counts 2, 3, 6, 7 and 8[5]).

The Individual Defendants at all relevant times were performing their official duties, within the scope of their authority, through means they were authorized to use.  Their actions violated no clearly-established law, and they are therefore entitled to qualified immunity and to dismissal of all claims.

Qualified immunity protects government officials performing discretionary functions as long as the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).[6]  The purpose of qualified immunity is to protect public officials "from undue interference with their duties and from potentially disabling threats of liability." *Elder v. Holloway*, 510 U.S. 510, 514

---

[5]  It is not clear if Counts 6 and 7 attempt to make claims under federal or state law or both.

[6]   The fact that it required 102 pages for the Plaintiff to allege her claims shows that there is no clearly-established law that controls assigning teachers duties for in-person and virtual instruction.

(1994). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Defendants who claim qualified immunity must show they acted "within the scope of [their] discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (*quoting Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). Whether defendants acted within their discretionary authority depends on whether they were performing legitimate job-related functions at the time of the challenged conduct, through means that were within their power to use. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). The question is not whether the defendants were authorized to commit an allegedly unlawful act, but whether the conduct served a proper purpose and was within, or reasonably related to, the outer perimeter of the officials' discretionary duties. *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). Once that is established, the burden shifts to the plaintiff to "show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194.

"To overcome qualified immunity, the plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman*, 370 F.3d at 1264. It is the plaintiff's burden to prove both prongs of this test. *Id*. A plaintiff need

not identify a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 552 (2015) (citation omitted). Clearly established law should not be defined "at a high level of generality." *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011). "As [the Supreme] Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552. The "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated reasonable government agent that what defendant is doing violates federal law *in the circumstances*." *Gonzalez v. Lee Cty. Hous. Auth.*, 161 F.3d 1290, 1295 (11ᵗʰ Cir. 1998) (emphasis in *Gonzalez*, citations omitted). This standard does not require that the "very action in question has previously been held unlawful," but "the unlawfulness must be apparent" under then-existing law. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Beasley's claims against Dr. Johnson and Mr. Higdon relate to purported terms and conditions of her employment by the TCSS, which the Defendants have shown they could have affected if at all, only through performing their official duties. No credible argument can be made that assigning teachers' duties for instructing students, providing teaching resources, and requiring use of specific teaching methods is somehow outside school administrators' official duties. The Plaintiff therefore must

show violation of a clearly-established constitutional right, which the allegations of the Complaint do not.

The Plaintiff's § 1983 claim is that she "experienced a change in [her] employment status in that Defendants . . . required Plaintiff . . . to prepare for and teach Virtual classes in addition to the On-Campus classes . . . significantly increasing each person's workload and teaching duties, without provision of compensation therefor, and thus each person's compensation has been significantly reduced." (Doc. 1, p. 60, ¶ 181).This is a wage and hour claim, disguised as a claim for denial of due process to avoid the fact that school teachers are exempt under the Fair Labor Standards Act. *See* 29 U.S.C. § 213(a)(1) (exempting employees employed in a bona fide executive, administrative or professional capacity and recognizing teachers as exempt professionals). The Plaintiff alleges, without authority, that "changes in employment status, including changes in compensation, implicate property interests in public employment. (Doc. 1, p. 60, ¶ 179).  Accepting all allegations of the Plaintiff's complaint as true, she was not terminated from her job or transferred or reassigned; she was only required to teach the same number of students in the same number of classes by two methods – in-person and online. Even in cases of alleged wrongful termination, the U.S. Supreme Court has held:

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

*Bishop v. Wood*, 426 U.S. 341, 349–50, 96 S. Ct. 2074, 2080, 48 L. Ed. 2d 684 (1976). Even if the Defendants' personnel decisions seem imperfect in hindsight, a civil rights claim under § 1983 in federal court is not the appropriate forum for review. Because the Complaint fails to allege a constitutional violation, the Defendants are entitled to qualified immunity.

The Plaintiff has failed to allege a constitutional violation for the further reasons that she had a sufficient remedy under state law for any purported change in her teaching duties, and she has not shown that the alleged changes in her duties were for pretextual, arbitrary or capricious reasons. The reasoning in the following analysis by another judge of this Court disposes of the Plaintiff's § 1983 procedural due process claim:

> Regarding plaintiff's procedural due process claim, the standard for this court's review is decided. "For nearly a quarter century, the law of this

17

circuit has been that 'the presence of a satisfactory state remedy mandates that we find that no procedural due process violation occurred.' " *McKinney*, 20 F.3d at 1564. Thus, "[i]t is well-settled that a constitutional violation is actionable under § 1983 only when the state refuses to provide a process sufficient to remedy the procedural deprivation." *Ingalls v. U.S. Space and Rocket Center*, 679 F. App'x. 935, 943 (11th Cir. 2017) (citing *Reams v. Irvin*, 561 F.3d 1258, 1266 (11th Cir. 2009) ).

*Warren v. Coosa Cty. Bd. of Educ.*, No. 2:17-CV-01977-ACA, 2018 WL 6001322, at *1 (N.D. Ala. Nov. 15, 2018). The Plaintiff acknowledges that the Alabama Students First Act, § 16-24C-1, et seq., provides procedures for teachers to challenge transfers or reassignments in their teaching duties.[7] Because the State of Alabama has provided a process for teachers to challenge involuntary changes in their job assignments, no procedural due process violation has occurred under 11th Circuit standards of review.

The Plaintiff's allegations also fail to establish any substantive due process violation. "The Eleventh Circuit law of 'substantive' due process in the government employment setting is clear. 'A violation of a public employee's right to substantive due process occurs when an employer deprives the employee of a property interest

---

[7]   The Defendants do not concede, or agree, that the Plaintiff was transferred or reassigned. At all times, she continued to report to the same school campus and taught the same number of students the same subjects in the same grades and the same number of classes. If the procedural protections of the Students First Act were unavailable to her, it was only because no transfer or reassignment occurred. Either way – whether there was no change in the Plaintiff's employment or she failed to challenge the changes through the statutory mechanism – the Complaint fails to show a procedural due process violation.

for an improper motive and by means that [are] pretextual, arbitrary and capricious, regardless of whether or not a hearing was held.' *Nolin v. Douglas County*, 903 F.2d 1546, 1553–54 (11th Cir.1990) (internal quotation marks omitted); *see also Barnett*, 707 F.2d at 1577; *Hearn*, 688 F.2d at 1332; *Adams*, 946 F.2d at 766; *Kelly v. Smith*, 764 F.2d 1412, 1413 (11th Cir.1985). The plaintiff must show (1) a deprivation of a state law property right in continued employment (2) made through pretextual means to disguise an improper motive." *McKinney v. Pate*, 20 F.3d 1550, 1558–59 (11th Cir. 1994).

Beasley acknowledges TCSS "instituted a plan to deal with the pandemic" (Doc. 1-1, p. 2), and her Complaint arises entirely from the procedures used for teaching students who were required to quarantine because of suspected exposure to the Coronavirus or who elected not to attend school in person due to the pandemic. Assuming, *arguendo*, the Complaint sufficiently alleges deprivation of a property right in employment, it does not establish any improper motive for alleged changes in teachers' duties. Because none of the alleged facts, if proved, would show any improper motive for the changes, the Complaint fails to state a cognizable substantive due process claim.

Even if the Court were to conclude that the Complaint sufficiently alleges a violation of a constitutional or statutory right, the Plaintiff cannot identify pre-

existing law that would have put the Defendants on notice that requiring teachers to instruct students both in-person and virtually in the midst of a global pandemic would violate those teachers' rights. To the contrary, previous cases, including *Bishop v. Wood, supra*, would have led the Defendants to believe that it was properly within their authority to devise methods for educating students that helped minimize the spread of COVID-19. Because the Complaint fails to allege any constitutional violation, and the Plaintiff cannot identify any clearly established law violated by the Defendants, they are entitled to qualified immunity and dismissal of all claims.

## VII.   <u>No Contract Existed Between Defendants Johnson Or Higdon And The Plaintiff.</u>

Count 4 of the Complaint alleges that all Defendants breached "their contracts with the Plaintiff." (Doc. 1, pp. 69-72). The Plaintiff acknowledges, however, that she is an employee of TCSS. (Doc. 1, p. 69, ¶ 204). She has no employment contract with the individual Defendants, including Dr. Johnson and Mr. Higdon, therefore the breach of contract claim must be dismissed.

All three federal district courts in Alabama have held that under Alabama law, there is no claim against a supervisory employee for negligent supervision or training of subordinates, because supervisory employees are not "employers." The Southern District Court held in *Ott v. City of Mobile*, 169 F. Supp. 2d 1301 (S.D. Ala. 2001):

> Alabama law is clear that the tort of negligent supervision or training requires as an element the existence of a master-servant relationship. "We are mindful of . . . the fact that this Court recognizes a cause of action *against the master* based upon the incompetence of the servant" *Lane v. Central Park, N.A.,* 425 So. 2d 1098 1100 (Ala. 1983) (emphasis added); *Accord Big B, Inc. v. Cottingham,* 634 So. 2d 999, 1002-03 (Ala. 1993). A supervisor is not the master of a subordinate, nor is the subordinate the master of the supervisor; rather, as Alabama cases make plain, the status of "master" is restricted to one who is actually or essentially the employer of the servant.

169 F. Supp. 2d at 1315. See also *Lucio v. City of Tarrant,* 2014 W.L. 3543696 (M.D. Ala. July 16, 2014) ("Alabama does not recognize a cause of action for a supervisor's negligent training or supervision of a subordinate."); and *Hammond v. City of Eufala,* 2012 W.L. 4343871 (M.D. Ala. Sept. 20, 2012) (same). The same reasoning mandates dismissal of the Plaintiffs' breach of contract claim against Dr. Johnson and Mr. Higdon. They were not the plaintiff's, nor any other teachers', "employer," and no contract existed between them. To the extent the breach of contract claim is alleged against Dr. Johnson and Mr. Higdon in an official capacity, it is barred by absolute state immunity and also is redundant of the claim against the TCSS and therefore unnecessary. The breach of contract claim must be dismissed against the Defendants in both their individual and official capacities.

WHEREFORE, Defendants Johnson and Higdon respectfully show that all claims against them are due to be dismissed.

*/s/ Clay R. Carr*
Mark S. Boardman (ASB-8572-B65M)
Clay R. Carr (ASB-5650-C42C)
BOARDMAN, CARR, PETELOS,
   WATKINS & OGLE, P.C.
400 Boardman Drive
Chelsea, Alabama 35043
Tel:  (205) 678-8000
Fax:  (205) 678-0000
mboardman@boardmancarr.com
ccarr@boardmancarr.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this **23rd** day of **August, 2021**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ruth B. McFarland, Esq.
Bryan P. Winter, Esq.
WINTER MCFARLAND, LLC
205 McFarland Circle North
Tuscaloosa, Alabama 35406

Heather Leonard, Esq.
HEATHER LEONARD PC
2105 Devereux Circle
Vestavia Hills, Alabama 35243

Brannon Buck, Esq.
BADHAM AND BUCK, LLC
2001 Park Place North, Suite 500
Birmingham, Alabama 35203

Raymond E. Ward, Esq.
Thomas W. Powe, Jr., Esq.
RAYMOND E. WARD, LLC
P.O. Box 1248
Tuscaloosa, Alabama  35403-1248

*/s/ Clay R. Carr*
OF COUNSEL