FILED
2021 Sep-13  PM 08:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

## **EXHIBIT 4**

Cheryl Michaels – Equal Employment Opportunity Commission Charge of Discrimination

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA <br> ☒ EEOC | |

PAGE 1

_____ and EEOC

*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mrs. Cheryl Michaels | 205-799-8329 | 11/22/58 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 13611 Country Club Drive | Northport, Alabama 35475 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Tuscaloosa County Board of Education, Tuscaloosa County School System, and Tuscaloosa County School Superintendent Keri Johnson | 2265 | (205) 785-4011 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1118 Greensboro Avenue | Tuscaloosa, AL 35401 | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 8/12/2020   Latest: 02/01/2021

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am a middle school Math teacher in the Tuscaloosa County Schools. Specifically, I teach 7th and 8th grade mathematics. This past August 2020, the Tuscaloosa County School Board instituted a plan to deal with the Covid-19 pandemic in our school system. This plan impacted me, and my personal and professional life, in a very negative manner. This plan also negatively impacted my fellow employees, especially my female colleagues who make up a majority of the teachers in our District and who usually have significant caretaking responsibilities outside of school. This plan, implemented by a Board of Education comprised of 6 men and 1 woman, has treated and impacted me and all of the female educators, as well as the caregivers, in a disparate manner based on gender, as well as our caregiving responsibilities.

Unlike some school systems across the State of Alabama, where the teachers were being divided into groups, with one group of teachers teaching all of the in-person, on-campus classes as was historically done prior to the pandemic, and the second group teaching all of the on-line, virtual classes to students who elected not to come to the school in person due to the pandemic, the Tuscaloosa County School Board enacted a plan that required each teacher in the District to teach a full load of in-person, on-campus classes every day, and then, after work when the school day was done, prepare for and teach an additional (equal) number of on-line, virtual classes, such that many teachers were teaching twice as many classes, five days per week. I believe that the Board of Education's plan violated federal law, Alabama law, and the Board's own policies. Not only did the plan enacted by the majority male Board discriminate against the majority of teachers who were female, by giving more work, but the Board's plan failed to provide any additional financial remuneration to the teachers for all of this extra work. Indeed, the online virtual classes actually required significantly more work, time, and preparation, and caused far more mental, emotional and physical injury, fatigue and frustration, than the traditional in-person classes. In addition, in order to meet the Board's demands, I and other teachers, had to work late into the evenings and most of the weekends, which significantly reduced my time to take care of my family.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT |

Date: May 5, 2021

Charging Party Signature: *Cheryl Michaels*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) 5/5/2021

JENNA BAKONDY
Notary Public, Alabama State at Large
My Commission Expires Oct. 16, 2021

EEOC Form 5 (11/09)

| | **Page 2** |
|---|---|

| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s): |
|---|---|---|

and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Please understand that a "virtual" class in Schoology does not mean that one is taking a class via a "Zoom Call." Rather, despite the representations of the Board, Schoology was in reality a "virtual" nightmare. With Schoology, there is not a teacher teaching the class on a Zoom Call (or Google meets or Facebook Messenger, etc), and 20-30 students watching the teacher and the lesson together on a Zoom call, and interacting with the teacher on a Zoom call. Rather, Schoology requires teachers to develop daily course teaching materials, and then upload the daily course teaching materials on the Schoology computer platform. The students then view and work with the course teaching materials via the Schoology program.

The preparation and uploading of Schoology lessons is far more complex and difficult than one can imagine. Schoology is not intuitive like an IPhone, or other smart devices. Schoology is not, user friendly, but is complex, cumbersome and difficult to learn and to utilize. And please understand, that despite the fact that the Board had five (5) months to prepare for virtual education of its students, the Board only provided de minimis training to each of the teachers that were required to use this very cumbersome and problematic system. (The Board provided even less training to the students and parents).

So not only were the teachers required to develop a specific set of up-loadable teaching materials, the teachers had to learn to maneuver and manipulate Schoology, itself. Moreover, the teachers also had to field and deal with all of the students' issues with Schoology, and web-based virtual technology. Teachers also had to field questions and with deal parents whose students were having such issues. The issues faced by students, and their concerned parents, occurred on a regular basis, and could arise out of and during learning sessions, classwork sessions, and grading sessions on Schoology.

It is also important to understand that in a traditional, in-person classroom setting, when a student asks a question in class, the teacher can answer the student's question and the other in the class can hear the answer and ask follow up questions. Conversely, when a virtual student asks a question in a virtual Schoology setting, the teacher responds to that one student via Schoology, computer, email, text, and/or telephone calls, and the other students cannot hear the question, the answer or the teacher's explanation. Rather, each teacher, especially in the math and science classes, has to answer and explain the same question or issue numerous times, not only via the computer within the Schoology platform, but also via email, text messages, and telephone calls. Moreover, in order to prevent cheating, teachers have to create and provide multiple different tests on the same subject matter to the virtual students (so that the virtual students can't work together to take the tests or otherwise cheat). The teachers also have to create and provide different tests for the same subject area to the in-person students, so that they are not taking the same tests as the virtual students, but all while still providing the same level of learning and testing to both virtual and in-person students.

Unbelievably, when I and other teachers tried to address these issues and the corresponding negative impacts on our working conditions, professional lives and personal well-being, the male-dominated School Board (comprised of 6 men and 1 woman) dismissed our complaints. The Board ignored our complaints, dismissed our suggestions and claims, and told us to get back to work. In fact, many of the teachers were teaching their full day of in-person classes at school, and then after the normal school day ended, were spending the afternoon, evening, and late into the night handling their virtual teaching duties through Schoology, preparing and uploading lessons, responding to issues and questions from students and parents, and dealing with testing and grading in a wholly inadequate program to create and grade multiple tests for the same class.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State or Local Agency Requirements* |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| May 5, 2021 *Date*     *Cheryl Michaels* *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) 5/5/202      **JENNA BAKONDY**<br>Notary Public, Alabama State at Large<br>My Commission Expires Oct. 16, 2021 |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

**PAGE 3**

and EEOC

State or local Agency, if any

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Across Alabama, other school districts recognized the reality and effects of the excessive teaching demands required by Schoology, as well as the negative working conditions caused by Schoology. Indeed, other school districts provided creative scheduling solutions, such as dividing students into two groups (A/B) with each group attending classes on campus two days per week, and the teachers having one day to work with remote, online virtual classes and students. This also reduced the number of students in each classroom, which reduced the opportunity to spread COVID-19. As stated above, some school districts divided their teachers into two groups, and had one group of teachers educating in class students and the other group working with the on-line students. With the other available plans which are equally effective, there was no reason for the Tuscaloosa County Schools to have a plan which caused us to do twice as much work as we were contracted to do.

During the second quarter of the school year (second 9 weeks), the Board purchased a different computer system for the online, virtual students. This system is called "Edgenuity." Unlike Schoology, the "Edgenuity" program is a self-contained system, in that supposedly everything a student needs to learn and complete the course of study is contained within the on-line program, itself. Supposedly, Edgenuity does not require any teacher participation, let alone daily teacher preparation, teacher-student interaction, teacher preparation of testing, or student-teacher grading interactions. Thus, Edgenuity was supposed to make everything easier because "Edgenuity" would not require the teachers to actually participate in the computerized educations process. Edgenuity would free the teachers from the virtual nightmare of Schoology.

However, even with the commencement of the Edgenuity program by the Board during the second 9 weeks of school, the Edgenuity program was not and could not be utilized for the significant number of in-person students who were temporarily removed from school and placed into quarantine due to the COVID-19 virus and protocols therefore. A number of these students were quarantined multiple times during the 2020-2021 school year. Thus, even if a student was coming to school, and receiving in-person instruction in the classroom, once a student was exposed to and/or contracted the COVID-19 virus, the student was required to leave school, and/or stay home, and quarantine. These quarantined students could not participate in Edgenuity. Rather, the quarantined students had to do virtual schooling in Schoology. And there were exposed students who had to be quarantined in practically every class. As a result, most teachers, the majority of whom were women, had to continue to work with students in Schoology, even with the use of Edgenuity. This meant that practically every teacher had to continue to prepare lessons and materials, upload lessons and materials, teach and respond to individual students (and assorted parents) via Schoology, email, text messages and phone when technical or subject matter questions were asked by quarantined students, and then prepare and grade multiple testing materials for students in the same subject matter class. The teachers had to do this whether they had 1 quarantined student or 20, and the preparation takes the same amount of time whether it's 1 student or 20. And all of this occurred on top of teaching their regular, full-time in-person classes.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| May 5, 2021        *Cheryl Michaels*<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)<br>5/5/2021 |

JENNA BAKONDY<br>Notary Public, Alabama State at Large<br>My Commission Expires Oct. 16, 2021

EEOC Form 5 (11/09)

<table>
<tr><td rowspan="2">**CHARGE OF DISCRIMINATION**<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.</td><td colspan="2">Charge Presented To:</td><td>Agency(ies) Charge No(s):</td><td rowspan="2">**PAGE 3**</td></tr>
<tr><td>☐ FEPA</td><td rowspan="2">☒ EEOC</td><td></td></tr>
<tr><td></td><td></td><td></td><td>and EEOC</td></tr>
</table>

State or local Agency, if any

THE PARTICULARS ARE (if additional paper is needed, attach extra sheet(s)):

Thus, I and many other teachers have been required to teach these quarantined and virtual students through the old Schoology program, and not the Edgenuity program. So, while the Board may tell the public that the Board has resolved these issues for teachers, in reality, the Board has not done so, and we female teachers and caregivers are still being discriminated against by requiring many of us to work many, many more additional hours beyond that which we have been hired and paid to perform. All of this additional work, time, stress, mental and physical fatigue from Schoology, without remuneration, both during the first nine weeks of school, and after the Board purchased Edgenuity, is even more discriminatory, when one recognizes that the Board has decided to provide significant compensation to only certain teachers who have to teach in Schoology, as well as the school-system's personnel who monitor remote student's attendance on Edgenuity (Remote Learning Coaches).

In fact, the monitoring of a virtual student's participation in Edgenuity does not require the monitor to create/upload lessons and materials, field questions from students/parents about the lessons, or create/administer multiple tests for each lesson. Rather, a monitor does just what it sounds like – "monitors" the student's attendance and participation, to wit: (1) is the student logging onto the Edgenuity program; and (2) is the student doing the student's lessons on Edgenuity. There is no teaching. There is just monitoring. These remote learning coaches appear to be receiving a $5,500.00 stipend.

Likewise, there is a subgroup of teachers, who teach subjects which are not provided by and within the Edgenuity program, such as elective teachers, AP teachers, and vocational/shop teachers. These teachers also appear to be receiving a stipend for the additional work which they are providing beyond the normal school hours, with stipends which range from $2,000 to $5,500 per class.

Conversely, unlike the Remote Learning Coaches who monitor virtual students in Edgenuity, and the teachers whose classes are not available in Edgenuity, many of the other teachers have continued to have to do work more in Schoology, but do not receive any additional pay. In fact, many teachers continue to work in Edgenuity after normal school hours without any additional pay, and there is no stipend like football and other coaches are paid.

Moreover, historically in the Tuscaloosa County School System, when teachers were asked to teach an additional class, the Superintendent would ask the teacher, the teacher would agree to do so, and the Superintendent would make a recommendation to the Board of Education to approve and hire the teacher, and compensate the teacher for teaching the additional class(es). Prior to the beginning of the 2020-2021 school year and to beginning the use of the Schoology program, the Superintendent never asked each of the teachers to teach the additional classes, but rather directed each teacher to teach the additional classes. Moreover, a teacher could not agree to teach the additional classes, because the teacher was not provided a choice of whether or not do so.

Please also note that we are not only being discriminated against in terms of workload and salary, but also in benefits, and retirement. For example, if a teacher does not carry a full teaching load, then the teacher loses salary, as well as time accrued in the Teachers Retirement System of Alabama. Conversely, when a teacher is required to work more, then then teacher should be paid more into the TRSA and have the additional time put in accrued into the TRSA.

I believe that I, along with a similarly situated class of women, have been discriminated against based on our gender in violation of Title VII of the Civil Rights Act of 1964, as amended, through both disparate treatment and disparate impact.

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

May 5, 2021
Date

*Cheryl Michaels*
Charging Party Signature

NOTARY–When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

*Cheryl M*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

5/5/2021

**JENNA BAKONDY**
Notary Public, Alabama State at Large
My Commission Expires Oct. 16, 2021

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or other**s who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against anyone, or for a union to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.