

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| **MICHELLE BEASLEY, LINDSEY WARREN, REBECCA KENNEDY, and CHERYL MICHAELS, individually and on behalf of all those similarly situated teachers employed by the TUSCALOOSA COUNTY SCHOOL SYSTEM,** )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| )<br>**Plaintiffs,** )<br>) | |
| **vs.** )<br>) | **CASE NO. 7:21-CV-890-LSC** |
| **TUSCALOOSA COUNTY SCHOOL SYSTEM; THE TUSCALOOSA COUNTY BOARD OF EDUCATION; DR. KERI JOHNSON, in her individual capacity; CHARLES ORR, in his individual capacity; PORTIA JONES, in her individual capacity; JOE CALVIN, in his individual capacity; BILL SQUIRES, in his individual capacity; RANDY SMALLEY, in his individual capacity; JAMIE LAKE, in his individual capacity; and DON PRESLEY, in his individual capacity,** )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| )<br>**Defendants.** ) | |

## DEFENDANT DR. KERI JOHNSON'S MOTION TO DISMISS

COMES NOW Defendant Dr. Keri Johnson and respectfully moves the Court to dismiss all claims against her.  As grounds, the Defendant shows as follows:

**INTRODUCTION**

Plaintiffs Michelle Beasley, Lindsey Warren, Rebecca Kennedy and Cheryl Michaels filed the First Amended Complaint (Doc. 13) in this case on their own behalf and purportedly on behalf of similarly situated teachers employed by the Tuscaloosa County School System (TCSS or Board) against TCSS, all Board members individually and Superintendent Dr. Keri Johnson in her individual capacity.[1]  The Amended Complaint states four counts.  Dr. Johnson is named in only Count 1, under 42 U.S.C. § 1983, which alleges the Defendants denied the Plaintiffs' procedural due process rights. Based on the following reasons and authorities, all claims against Dr. Johnson are due to be dismissed.

**I.    Dr. Johnson Is Entitled To Qualified Immunity.**

Dr. Johnson was at all relevant times performing her official duties, within the scope of her authority, through means she was authorized to use.  Her actions violated no clearly-established law, and she is therefore entitled to qualified immunity and to dismissal of all claims.

Qualified immunity protects government officials performing discretionary functions as long as the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

---

[1]    TCSS Chief School Financial Officer Danny Higdon was named as a Defendant in the original Complaint, but is not named in the Amended Complaint.

2

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to protect public officials "from undue interference with their duties and from potentially disabling threats of liability." *Elder v. Holloway*, 510 U.S. 510, 514 (1994). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Defendants who claim qualified immunity must show they acted "within the scope of [their] discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (*quoting Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). Whether the Defendant acted within her discretionary authority depends on whether she was performing legitimate job-related functions at the time of the challenged conduct, through means that were within her power to use. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). The question is not whether the Defendant was authorized to commit an allegedly unlawful act, but whether the conduct served a proper purpose and was within, or reasonably related to, the outer perimeter of her discretionary duties. *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). Once that is established, the burden shifts to the Plaintiffs to "show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194.

3

"To overcome qualified immunity, the plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman*, 370 F.3d at 1264. It is the plaintiff's burden to prove both prongs of this test. *Id*. A plaintiff need not identify a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 552 (2015) (citation omitted). Clearly established law should not be defined "at a high level of generality." *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011). "As [the Supreme] Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552. The "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated reasonable government agent that what defendant is doing violates federal law *in the circumstances*." *Gonzalez v. Lee Cty. Hous. Auth*., 161 F.3d 1290, 1295 (11th Cir. 1998) (emphasis in *Gonzalez*, citations omitted). This standard does not require that the "very action in question has previously been held unlawful," but "the unlawfulness must be apparent" under then-existing law. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Plaintiffs' claims against Dr. Johnson relate to purported terms and conditions of their employment by the TCSS, which the Defendant could have

affected if at all, only through performing her official duties. The Plaintiffs specifically allege "Johnson, *as the Superintendent of TCSS*, took the following actions that affected Plaintiffs' property rights in their employment: . . . " (Doc. 13, p. 39, ¶ 165). No credible argument can be made that assigning teachers' duties for instructing students, providing teaching resources, requiring use of specific teaching methods, or determining appropriate compensation – which are the fundamental bases of the Plaintiffs' claims – are somehow outside a school superintendent's official duties. And the fact the Plaintiffs claim their work conditions were altered impliedly admits that assigning teachers' duties was within the Defendant's power. The Plaintiffs' own allegations establish that Dr. Johnson qualifies for immunity. They must therefore show the violation of a constitutional right that was clearly-established at the time, which the allegations of the Amended Complaint do not.

The Plaintiffs' § 1983 claim is that by requiring teachers to use both virtual and in-person teaching methods and resources during the COVID 19 pandemic, for no additional compensation, the Defendants affected the Plaintiffs' property rights in their employment without following the procedures of the Alabama Students First Act. (Doc. 13, pp. 37-43). This is a wage and hour claim, which the Plaintiffs have attempted to disguise as a claim for denial of due process to avoid the fact that school teachers are exempt under the Fair Labor Standards Act. *See* 29 U.S.C. § 213(a)(1)

(exempting employees employed in a bona fide executive, administrative or professional capacity and recognizing teachers as exempt professionals). Accepting all allegations of the Complaint as true, the Plaintiffs were not terminated from their jobs or transferred or reassigned; they were only required to teach the same number of students the same subjects in the same number of classes by two methods – in-person and online – because of the COVID 19 pandemic. Even in cases of actual wrongful termination, the U.S. Supreme Court has held:

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

*Bishop v. Wood*, 426 U.S. 341, 349–50, 96 S. Ct. 2074, 2080, 48 L. Ed. 2d 684 (1976).  Even if the Court were to disagree in hindsight with  Defendants' personnel decisions, the Supreme Court has held that such decisions do not violate the Constitution and federal court is not the appropriate forum for review.  The allegations of the Complaint, if proved, would not satisfy the first test to overcome Dr. Johnson's qualified immunity.

6

The Plaintiffs have failed to allege a constitutional violation for the further reasons that they had a sufficient remedy under state law for any purported change in their teaching duties, and they have not shown that alleged changes in their duties were for pretextual, arbitrary or capricious reasons.   The following analysis by another judge of this Court is fitting and disposes of the Plaintiffs' § 1983 procedural due process claim:

> Regarding plaintiff's procedural due process claim, the standard for this court's review is decided. "For nearly a quarter century, the law of this circuit has been that 'the presence of a satisfactory state remedy mandates that we find that no procedural due process violation occurred.' " *McKinney*, 20 F.3d at 1564. Thus, "[i]t is well-settled that a constitutional violation is actionable under § 1983 only when the state refuses to provide a process sufficient to remedy the procedural deprivation." *Ingalls v. U.S. Space and Rocket Center*, 679 F. App'x. 935, 943 (11th Cir. 2017) (citing *Reams v. Irvin*, 561 F.3d 1258, 1266 (11th Cir. 2009) ).

*Warren v. Coosa Cty. Bd. of Educ.*, No. 2:17-CV-01977-ACA, 2018 WL 6001322, at *1 (N.D. Ala. Nov. 15, 2018). The Plaintiffs acknowledge that the Alabama Students First Act, § 16-24C-1, et seq., provides procedures for teachers to challenge termination, transfer or reassignment of their teaching duties.[2] Because the State of

---

[2]   The Defendants do not concede, or agree, that the Plaintiffs were transferred, reassigned or partially terminated. At all times, they continued to report to their same assigned school campuses and taught the same number of students the same subjects in the same grades and the same number of classes. If the procedural protections of the Students First Act were unavailable to them, it was only because no change in their employment occurred. Either way – whether there was no change in the Plaintiffs' employment or they failed to challenge the changes through the statutory mechanism – the First Amended Complaint fails to show a procedural due process violation.

Alabama has provided a process for teachers to challenge involuntary changes in their job assignments, no procedural due process violation has occurred under 11th Circuit standards of review.

Even if the Court finds an issue of fact as to whether the Plaintiffs were afforded proper procedural protections, Dr. Johnson still is entitled to qualified immunity because it was not clearly established when the 2020-2021 school term began that requiring teachers to instruct some students in-person and others virtually would violate the teachers' legal rights. Nor was it clearly established then, or now, that implementing additional teaching resources or methods – without changing the teachers' work locations, numbers of students, numbers of classes, or subjects taught – would require the procedural prerequisites of the Students First Act. The allegations of the Amended Complaint also cannot satisfy the second element necessary to overcome Dr. Johnson's qualified immunity and she is entitled to dismissal of all claims.

## II.   No Contract Existed Between Dr. Johnson And The Plaintiffs.

Count 2 of the First Amended Complaint alleges that the Board entered into and breached employment contracts with the Plaintiffs.  (Doc. 13, pp. 45- 50 ). Count 2 does not specifically name Dr. Johnson and makes no factual allegations against her. However, the Plaintiffs hedge in a footnote that "to the extent Johnson

or the Board members are proper defendants . . . , then Count 2 is likewise alleged against Johnson and the Board Members." (Doc. 13, p. 45, fn. 3). The Plaintiffs acknowledge, however, their employment relationship was with the school board. (Doc. 13, p. 45, ¶ 188; p. 47, ¶¶ 193, 197; p. 48, ¶ 199).  The Plaintiffs had no employment contract with Dr. Johnson, therefore the breach of contract claim must be dismissed.

All three federal district courts in Alabama have recognized that under Alabama law, there is no employer-employee relationship between supervisory personnel and their subordinates. In the context of claims for negligent supervision or training of subordinates, the Southern District Court held in *Ott v. City of Mobile*, 169 F. Supp. 2d 1301 (S.D. Ala. 2001):

> Alabama law is clear that the tort of negligent supervision or training requires as an element the existence of a master-servant relationship. "We are mindful of . . . the fact that this Court recognizes a cause of action *against the master* based upon the incompetence of the servant" *Lane v. Central Park, N.A.,* 425 So. 2d 1098 1100 (Ala. 1983) (emphasis added); *Accord Big B, Inc. v. Cottingham,* 634 So. 2d 999, 1002-03 (Ala. 1993).  A supervisor is not the master of a subordinate, nor is the subordinate the servant of the supervisor; rather, as Alabama cases make plain, the status of "master" is restricted to one who is actually or essentially the employer of the servant.

169 F. Supp. 2d at 1315. See also *Lucio v. City of Tarrant, Ala.,* No. 2:13-CV-1970-RDP, 2014 WL 3543696, at *3 (N.D. Ala. July 16, 2014) ("Alabama

does not recognize a cause of action for a supervisor's negligent training or supervision of a subordinate."); and *Hammond v. City of Eufala,* No. 211-CV-1045-WKW, 2012 WL 4343871, at *3 (M.D. Ala. Sept. 20, 2012) (same). The same reasoning mandates dismissal of the Plaintiffs' breach of contract claim against Dr. Johnson.  She was not the Plaintiffs' or any other teachers' "employer," and no contract existed between them.

To the extent the breach of contract claim is alleged against Dr. Johnson in an official capacity, it is barred by absolute state immunity under Article I, § 14, Alabama Constitution (1901) and is also merely redundant of the claim against the TCSS and therefore unnecessary. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (holding that suits against public officials in an official capacity are simply another way of pleading actions against the entities of which the officers are agents.)  If the breach of contract claim is intended to include Dr. Johnson either officially or individually, it must be dismissed.

## III.   Dr. Johnson Cannot Be Held Liable To The Plaintiffs In *Quantum Meruit*.

The Plaintiffs hedge again in Count 3, for payment *quantum meruit*, by naming only the Board, but also including in a footnote "to the extent Johnson or the Board Members are proper defendants . . ., then Count 3 is likewise alleged against Johnson and the Board Members." (Doc. 13, p. 50, fn. 4). For the same reason Dr. Johnson

cannot be liable for alleged breach of contract – she is not the Plaintiffs' employer – she also cannot be held liable to them in *quantum meruit*.

The *quantum meruit* claim fails for the additional, practical reason that the Plaintiffs were paid for what they did. Teachers are hired to teach students. The Plaintiffs reported to the same schools and taught the same number of students in the same number of classes the same subjects in the same grades they would have taught if modified teaching procedures had not been necessitated by the pandemic. Because the allegations of the Amended Complaint, even if proved, would not show that the Plaintiffs did more than they were paid to do, Count 3 must be dismissed.

## IV. State Law Claims Against Dr. Johnson Are Barred By State-Agent Immunity.

Dr. Johnson also is entitled to dismissal of the state law breach-of-contract and *quantum meruit* claims on grounds of State-agent immunity. "Article I, §14, Ala. Const. (1901), provides 'That the State of Alabama shall not be made a defendant in any court of law or equity.' This is the basis for the doctrine of sovereign immunity." *Louviere v. Mobile County Bd. of Educ.,* 670 So. 2d 873, 877 (Ala. 1995) "County boards of education are not agencies of the counties, but local agencies of the state ... . Therefore, they partake of the state's immunity from suit... ." *Hutt v. Etowah County Bd. Of Educ*., 454 So. 2d 973, 974 (Ala. 1984). "Thus, a person who acts as an agent of a county board of education shares in the State's sovereign immunity if

the act complained of was committed while that person was performing a discretionary act." *Carroll v. Hammett*, 744 So. 2d 906, 910 (Ala. 1999).

The Alabama Supreme Court held in *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000):

> A state agent ***shall*** be immune from civil liability when the conduct made the basis of the claims against the agent is based upon the agent's
> . . .
> (2) exercising his or her judgment in . . . (d) hiring, firing, transferring, assigning, or supervising personnel; or
> . . .
> (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

*Id.* at 405. (Emphasis in original). "*Cranman* states categories, but does not purport to set forth an exhaustive list of activities falling within each category." *Howard v. City of Atmore*, 887 So. 2d 201, 206 (Ala. 2003).

"*Ex parte Cranman* provides that an agent of the State is protected from liability for decisions made while exercising his or her judgment in the administration of a department or agency of the State when assigning or supervising personnel. 792 So.2d at 405." *Ex parte Trottman*, 965 So. 2d 780, 786 (Ala. 2007)(also citing *Hill v. Allen*, 495 So.2d 32 (Ala.1986)). *See also Ex parte Spivey*, 846 So. 2d 322, 331 (Ala. 2002) ("A State agent is also immune from civil liability for exercising judgment in supervising personnel"); *Nance v. Matthews*, 622 So. 2d 297, 301

(holding that personnel training and supervision "require constant decision making and judgment on the part of the supervisor or trainer"); and *Ex parte Trimble*, 201 So. 3d 1124 (Ala. 2016) (holding that teacher and principal were entitled to State-agent immunity for all claims, including breach of contract).  Beasley's state-law claims against Dr. Johnson relate to supervising and assigning duties to TCSS personnel for the purpose of educating students. Everything she is alleged to have done, or failed to do, is within the categories of professional conduct that the Alabama Supreme Court has repeatedly held to be protected by State-agent immunity.

Although the Plaintiffs contend there are questions of fact whether the Defendants "acted willfully, fraudulently, maliciously in bad faith, beyond their respective authority and/or under a mistaken interpretation of the law" (Doc. 13, p. 34, ¶ 147(k)), there are no facts alleged in the Amended Complaint that, if proved, would show one of those exceptions to Dr. Johnson's immunity.  *See Cranman*, 792 So. 2d at 405. "'[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.' *Dalrymple v. Reno*, 334 F.3d 991, 996 (11ᵗʰ Cir.2003) (quoting *Marsh v. Butler County, Ala*., 268 F.3d 1014, 1036 n. 16 (11ᵗʰ Cir.2001)). And, 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." ' *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).” *Jones v. Buckner*, 963 F. Supp. 2d 1267, 1273 (N.D. Ala. 2013). Because the facts alleged cannot establish any applicable exception to State-agent immunity, Dr. Johnson is entitled to immunity and dismissal of all claims.

WHEREFORE, Defendant Dr. Keri Johnson respectfully shows that all claims against her are due to be dismissed.

/s/ Clay R. Carr
Mark S. Boardman (ASB-8572-B65M)
Clay R. Carr (ASB-5650-C42C)
BOARDMAN, CARR, PETELOS,
   WATKINS & OGLE, P.C.
400 Boardman Drive
Chelsea, Alabama 35043
Tel:   (205) 678-8000
Fax:   (205) 678-0000
mboardman@boardmancarr.com
ccarr@boardmancarr.com

*Attorneys for Defendant Dr. Keri Johnson*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this **30th day of September, 2021,** I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ruth B. McFarland, Esq.
Bryan P. Winter, Esq.
WINTER MCFARLAND, LLC
205 McFarland Circle North
Tuscaloosa, Alabama 35406

Heather Leonard, Esq.
HEATHER LEONARD PC
2105 Devereux Circle
Vestavia Hills, Alabama 35243

Brannon J. Buck, Esq.
Christopher B. Driver, Esq.
BADHAM AND BUCK, LLC
2001 Park Place North, Suite 500
Birmingham, Alabama 35203

Raymond E. Ward, Esq.
Thomas W. Powe, Jr., Esq.
RAYMOND E. WARD, LLC
P.O. Box 1248
Tuscaloosa, Alabama  35403-1248

*/s/ Clay R. Carr*
OF COUNSEL

15