

FILED
2022 Apr-26  AM 08:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **MICHELLE BEASLEY, LINDSEY WARREN, REBECCA KENNEDY, and CHERYL MICHAELS, individually and on behalf of all those similarly situated teachers employed by the TUSCALOOSA COUNTY SCHOOL SYSTEM,** | ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **7:21-cv-00890-ACA** |
| **v.** | ) | |
| **TUSCALOOSA COUNTY SCHOOL SYSTEM, et al.,** | ) ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

Because of the COVID-19 pandemic, Defendant Tuscaloosa County School System ("the School System") offered students the option to take classes virtually during the 2020–2021 school year.  Having both in-person and virtual students required teachers in the School System to work longer hours and change lesson and testing plans, but the School System did not raise teacher salaries.  As a result, Plaintiffs Michelle Beasley, Lindsey Warren, Rebecca Kennedy, and Cheryl Michaels, teachers in the School System, filed this putative class action against the School System, Superintendent of the Tuscaloosa County School System Dr. Keri

Johnson, the Tuscaloosa County Board of Education ("the Board"), and the members of the Board—Charles Orr, Portia Jones, Joe Calvin, Bill Squires, Randy Smalley, Jamie Lake, and Don Presley (collectively, "the Board Members"). (Doc. 13). All four plaintiffs assert that:

(1) Dr. Johnson and the Board Members denied them procedural due process by increasing their workload without providing additional compensation, which constituted a partial termination and a reduction in their rates of compensation ("Count One");

(2) the School System and the Board breached contracts with Plaintiffs by lengthening the workday without increasing compensation and by failing to compensate teachers for teaching quarantined students remotely ("Count Two"); and

(3) in the alternative to the breach of contract claim, the School System and the Board are liable for quantum meruit ("Count Three").

In addition, Ms. Beasley and Ms. Kennedy assert that:

(4) the School System and the Board discriminated against them based on their sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Count Four").

The School System, the Board, and the Board Members have jointly moved to dismiss the amended complaint. (Doc. 17). Dr. Johnson has separately moved to dismiss the amended complaint. (Doc. 19). And Plaintiffs have moved to amend the complaint, seeking to add Ms. Warren as a plaintiff asserting Count Four. (Doc. 30).

Because Plaintiffs cannot state a claim for either violation of their right to procedural due process or violation of Title VII, the court **WILL GRANT** the motions to dismiss and **WILL DISMISS** the federal claims **WITH PREJUDICE**.

Given the dismissal of the federal claims, the court **WILL DECLINE** to exercise supplemental jurisdiction over the state law claims.  The court **WILL DENY AS MOOT** the motion to amend the complaint to add Ms. Warren as a plaintiff asserting Count Four.

## I.   BACKGROUND

At this stage, the court must accept as true the factual allegations in the amended complaint and construe them in the light most favorable to Plaintiffs. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).  The court may also consider documents a plaintiff attaches to a complaint.  *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . ."); Fed. R. Civ. P. 10(c).  Plaintiffs attach to their complaint the charges of discrimination they filed with the Equal Employment Opportunity Commission ("EEOC").  (Docs. 13-1 to 13-7).  The charges are part of the amended complaint and the court will accept the allegations contained within them as true.  *See Hoefling*, 811 F.3d at 1277.

In addition to the complaint and its attachments, the court may consider evidence attached to a defendant's motion to dismiss if the operative complaint refers to that document, the document is central to the plaintiff's claim, and the authenticity of the document is not challenged.  *Horsley v. Feldt*, 304 F.3d 1125,

1134 (11th Cir. 2002). The School System, the Board, and the Board Members attach to their motion to dismiss Policy 6.11 from the Board's Policy Manual. (Doc. 17 at 5). Plaintiffs refer to Policy 6.11 throughout their amended complaint and that policy is central to their claims. (Doc. 13 at 12 ¶ 57, 24 ¶ 112, 52 ¶ 214, 54 ¶ 226). Moreover, they do not challenge the authenticity of the document, nor do they argue that the court cannot consider it. (*See generally* doc. 21). Accordingly, the court will also consider Policy 6.11 in deciding the motions to dismiss.

The Tuscaloosa County Board of Education controls and supervises the public school system for Tuscaloosa County. (Doc. 13 at 3 ¶ 5, 11–12 ¶ 56); Ala. Code § 16-8-9. The seven Board Members were the members of Tuscaloosa County's Board at all times relevant to this lawsuit. (Doc. 13 at 4–5 ¶¶ 8–15). Dr. Johnson is Tuscaloosa County's superintendent of education, who acts as the chief executive officer and the secretary of the Board. (*Id.* at 4 ¶ 7); Ala. Code § 16-9-1. Plaintiffs are tenured teachers who work in elementary, middle, and high schools in Tuscaloosa County. (Doc. 13 at 2–3 ¶¶ 1–4, 11 ¶¶ 52–55; *see id.* at 38 ¶ 162). Plaintiffs, like the "significant majority of the certified teachers in the Tuscaloosa County Schools," are female. (*Id.* at 9 ¶ 45, 11 ¶¶ 52–55). Plaintiffs each also provide caregiving to family members outside of school. (*Id.* at 11 ¶¶ 52–55).

The Board's Policy 6.11 provides that "[c]ertified teaching personnel are generally required to be on duty 15 minutes before the time set for the opening of

4

their respective school and 15 minutes after the close of the school day, Monday through Friday, and the necessary time to transact faculty meetings, school business, and safe orderly dismissal of students etc." (Doc. 13 at 26 ¶ 126; doc. 17 at 5). The policy gives the superintendent the authority to designate time schedules for certified personnel. (Doc. 17 at 5). The School System's salary schedule lists certain "assumptions," including that "[e]mployees performing equivalent tasks will receive equivalent remuneration." (Doc. 13 at 26 ¶ 127). The salary schedule and policy manual state that teachers work for the Board pursuant to a contract. (*Id.* at 26 ¶ 128). In addition, the Alabama Code governs termination of public school teachers. (Doc. 13 at 27 ¶¶ 130–31); Ala. Code § 16-24-5(c), 16-24c-6(b).

In response to the COVID-19 pandemic, the School System offered public school students the option to continue taking classes in person or to take class virtually for the 2020–2021 school year.[1] (Doc. 13 at ¶ 63). The Board approved the use of an online learning platform called "Schoology" to teach virtual students. (*Id.* at 13 ¶¶ 65–66). But the Board did not vote on how teachers would use Schoology; instead, Dr. Johnson, as superintendent, implemented her own plan. (*Id.* at 13 ¶ 66).

---

[1] Defendants contend that they made this offer to students because of a mandate from the Alabama State Department of Education. (Doc. 18 at 2). That allegation, however, does not appear in the complaint. (*See generally* doc. 13). The court therefore cannot consider that allegation in deciding Defendants' motions to dismiss.

Dr. Johnson's plan involved teachers maintaining their in-person workload while also teaching virtual students through the Schoology program. (Doc. 13 at 13 ¶ 64). This dramatically increased the teachers' workloads because they had to teach themselves how to use Schoology, create separate lesson plans for in-person and virtual students, make different tests and quizzes for each type of student, and teach the virtual students and their parents how to use the Schoology program. (*Id.* at 14–15 ¶¶ 67–75, 16–17 ¶ 79). Using Schoology meant that teachers "were effectively adding another class period for each virtual class taught." (*Id.* at 17 ¶ 82). Using Schoology to teach virtual students required several of the named plaintiffs to work twenty to thirty more hours per week, and one of the plaintiffs to spend evenings and weekends working when she had not previously had to do so. (*Id.* at 18 ¶ 87, 20 ¶ 93, 21 ¶ 98, 22 ¶ 102). Despite the increase in work for teachers, the Board did not increase their pay. (*Id.* at 22 ¶ 104).

The School System used Schoology for the first nine weeks of the 2020–2021 year. (Doc. 13 at 17 ¶ 80). Ten weeks into the school year, the Board adopted a new virtual learning platform called "Edgenuity." (*Id.* at 22 ¶ 105). Edgenuity provided its own learning content and did not require teachers to create separate lesson plans for virtual students or to supervise the virtual classes. (*Id.* at 22–23 ¶¶ 106–08). But Edgenuity did not provide content for all classes, so teachers were still required to teach those classes through Schoology. (*Id.* at 23 ¶¶ 110–11). The Board, on

Dr. Johnson's recommendation, paid teachers an additional stipend for teaching these Schoology classes.  (*Id.* at 23 ¶ 111).

Aside from the additional Schoology classes offered to virtual students, teachers also had to use Schoology to teach in-person students who were quarantining.  (Doc. 13 at 24 ¶ 114).  At least some in-person students were quarantined "virtually all the time."  (*Id.* at 24 ¶ 115).  Using Schoology to teach quarantined students implicated all of the same problems it had for virtual students.  (*Id.* at 24–25 ¶¶ 116–17).  As a result, after the first nine weeks of the school year, Plaintiffs had to work an additional ten to fifteen hours per week teaching quarantined students.  (*Id.* at 25 ¶ 119).  The Board did not increase Plaintiffs' compensation for this extra work.  (*Id.* at 25 ¶ 120).

The failure to pay teachers for their extra work was a deviation from the School Systems' norm.  Historically, the Board would compensate teachers pro rata for each additional class over a teacher's usual number of classes and would account for the increased class load in calculating a teacher's time accrued in the Teachers Retirement System of Alabama.  (Doc. 13 at 25–26 ¶¶ 122–24; doc. 13-4 at 5).  For example, "football and other coaches (the majority of whom are males) . . . are paid additional compensation because they spend hours after school doing work with students."  (Doc. 13-6 at 3).

Dr. Johnson implemented the changes to Tuscaloosa County teachers' job requirements without making a recommendation to the Board or receiving the Board's approval, although the Board and its Members were aware of the changes. (Doc. 13 at 28 ¶ 134, 29 ¶ 137).  At some point, teachers complained but the Board "dismissed [their] complaints as being 'whiny females.'"  (Doc. 13-1 at 2).

## II.   DISCUSSION

Plaintiffs assert that Dr. Johnson and the Board Members denied them procedural due process; that the School System and the Board breached their employment contracts; that the School System and the Board are liable for quantum meruit; and that the School System and the Board violated Title VII by discriminating against them based on their sex.  (Doc. 13 at 37–58).  Defendants seek to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6).  (Docs. 17, 19).  The court will address the two federal claims first, followed by the state law claims.

Under Rule 12(b)(6), the court must dismiss the case if the plaintiff fails to plead "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plausible claim for relief requires "enough fact[s] to raise a reasonable

expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556. A complaint need not contain detailed factual allegations, but it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

1. Count One (Procedural Due Process)

In this claim, Plaintiffs allege that Dr. Johnson unilaterally required teachers in the School System to teach online classes to virtual and quarantined students without providing additional compensation. (Doc. 13 at 39 ¶ 165). According to Plaintiffs, this unauthorized reduction in their rate of compensation is a partial termination of employment under Alabama law. (*Id.* at 42 ¶ 176). Plaintiffs assert that Dr. Johnson's enactment of this change without authorization from the Board and the Board's failure to vote on Dr. Johnson's plan amounts to a violation of procedural due process by Dr. Johnson and the Board Members. (*Id.* at 40–41 ¶ 169–70, 44 ¶ 185).

The Board Members move to dismiss this claim for failure to state a claim and based on their entitlement to qualified immunity. (Doc. 18 at 5–17). Dr. Johnson moves to dismiss this claim based on her entitlement to qualified immunity, an assertion that includes her argument that Plaintiffs fail to state a procedural due process claim. (Doc. 19 at 2–8). Because the court finds that Plaintiffs do not state

a procedural due process claim, the court will not address the qualified immunity question.

To state a procedural due process claim, a plaintiff must allege facts showing "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." *Worthy v. City of Phenix City*, 930 F.3d 1206, 1223 (11th Cir. 2019) (quotation marks omitted).  Even if a plaintiff has alleged a deprivation, "[i]f adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived [her] of procedural due process." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000).  This is because "the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc).  This is so whether the deprivation was negligent or intentional.  *Id.* at 1562–63 (citing *Parratt v. Taylor*, 451 U.S. 527 (1981) and *Hudson v. Palmer*, 468 U.S. 517 (1984)).

Defendants argue that Plaintiffs had no protected property interest in teaching in-person classes as opposed to virtual classes or in the number of hours required to perform their jobs, and that in any event, they received adequate process because the Alabama Code provides for appeals from decisions of county school boards.  (Doc.

18 at 7–15; doc. 19 at 6–8).  Plaintiffs respond that Alabama Supreme Court precedent and the School System's own policies create a teacher's property interest in her rate of compensation and hours worked, and that no administrative remedy existed because they could not pursue an appeal absent a vote by the Board.  (Doc. 21 at 9–16, 18–20).

The property interest question under state law is far from clear, and the court does not find the briefing adequate to opine on that important question of Alabama law.  Moreover, as Defendants argue, even assuming the deprivation of a protected property interest, the availability of an adequate state remedy defeats Plaintiffs' procedural due process claim.

Plaintiffs' position is that the changes Dr. Johnson unilaterally imposed on their work duties and hours constituted "partial terminations" or alterations in their rates of compensation.  (*See* doc. 13 at 40–41 ¶ 170).  They contend that no state remedy was available to them because Alabama Code §§ 16-24C-5 and 16-24C-6 set out the procedures to terminate teachers and to modify employee compensation, and under those code sections, an appeal is available only after the Board votes on the superintendent's recommendation.  (*Id.* at 41–42).  Plaintiffs assert that because the Board never voted to approve Dr. Johnson's changes, they had no way to appeal.  (*Id.*; *see also* doc. 21 at 19 ("Without a recommendation [from the superintendent], there is nothing for a Board to hear, and if a Board has nothing to hear, then it

effectively can neither grant nor deny a hearing.  As a result, a teacher is essentially stuck in limbo because she has not been provided the first necessary step to start her procedural journey.") (citation omitted).

Plaintiffs acknowledge that another code section, Ala. Code § 16-24C-12, provides that "[a]n employee who has attained tenure or nonprobationary status and has been denied a hearing before an employer subject to the requirements of this chapter may appeal for relief directly to the Chief Administrative Law Judge of the Office of Administrative Hearings, Division of Administrative Law Judges, Office of the Attorney General."  (Doc. 21 at 20).  They argue, however, that an appeal under this code section is available only if the Board affirmatively denied a request for a hearing, and they could not request a hearing if the superintendent and Board entirely failed to follow the process for terminating employees or modifying compensation.  (*Id.*).

To resolve this question, the court must summarize the process for terminations and modifications to compensation.  Plaintiffs are all tenured teachers in the School System.  (*See* doc. 13 at 38 ¶ 162).  Under Alabama Code § 16-24C-6, the county superintendent can recommend the termination of a tenured teacher and must serve written notice of the proposed termination to the employee.  *Id.* § 16-24C-6(b).  Reductions or modifications of compensation are considered terminations unless they are prospective, based on the superintendent's recommendation and the

Board's approval, and applied to similarly situated employees. *Id*. § 16-24C-6(h)(2). After receiving notice, the employee may request a hearing before the Board. *Id.* § 16-24C-6(b). If the employee does not request a hearing, the Board votes on the recommendation. *Id.* If the employee does request a hearing, the Board must hold one, after which it votes on the superintendent's recommendation. *Id.* § 16-24C-6(c), (d).

An employee terminated "following a hearing requested by the employee" may appeal to the State Superintendent of Education, who refers the appeal to the Executive Director of the Alabama State Bar Association, who selects a hearing officer. Ala. Code § 16-24C-6(e). Either party may appeal an adverse decision by the hearing officer to the Alabama Court of Civil Appeals. *Id.* § 16-24C-6(f).

An employee who "has been denied a hearing before an employer subject to the requirements of this chapter may appeal for relief directly to the Chief Administrative Law Judge of the Office of Administrative Hearings, Division of Administrative Law Judges, Office of the Attorney General." Ala. Code § 16-24C-12. "The appeal shall state facts sufficient to allow the judge to determine tentatively whether or not the employer has complied with this chapter in failing to accord the employee a hearing." *Id.* The administrative law judge "shall either order a hearing before the employer or sustain the action taken by the employer." *Id.* Either party

may appeal the administrative law judge's decision to "the circuit court of the county in which the principal administrative offices of the employer are located." *Id.*

Read together, it is clear that § 16-24C-6(e) sets out the appeal process when the Board holds a hearing and § 16-24C-12 sets out the appeal process when the Board does not hold a hearing. Plaintiffs argue that § 16-24C-12's use of the phrase "denied a hearing" means that they could appeal only if the Board rejected an employee's request for a hearing, and that an employee cannot request a hearing where the Board has deviated from Chapter 24C's procedures. (Doc. 21 at 20). Their position elevates form over substance, and the court does not find that reading of the statute persuasive. Nothing in Chapter 24C precludes a teacher from requesting a hearing or appealing when the superintendent or the Board failed to comply with the other procedural requirements contained in that chapter.

For example, in *Taylor v. Huntsville City Board of Education*, 143 So. 3d 219, 222 (Ala. Civ. App. 2013), a board of education terminated a teacher's employment without sending her the notice of intent required under § 16-24C-6(k). Among other things, the notice of intent informs a teacher of her right to a hearing and how she may request a hearing. Ala. Code § 16-24C-6(b). Not having received a notice of intent, the teacher did not request a hearing and the Board voted to terminate her employment. *Taylor*, 143 So. 3d at 222. After learning that her employment had been terminated, the teacher requested a hearing and the Board denied that request.

14

*Id.* Nothing in § 16-24C-6 provides that a teacher may request a hearing *after* the Board has approved the superintendent's recommendation to terminate her employment. But, despite that statutory gap, the administrative law judge and, eventually, the Alabama Court of Civil Appeals, heard her appeal and reversed the Board's action on the ground that the teacher was entitled to a pretermination hearing. *Id.* at 225–26, 230.

The court acknowledges that in *Taylor*, the teacher requested a hearing and the Board denied that request. 143 So. 3d at 222. That case is therefore different from this case, in which the teachers did not request hearings, so the Board never denied their requests for hearings. Nevertheless, this court concludes that *Taylor* shows that Plaintiffs could have requested hearings *after* the superintendent made her unilateral changes to their jobs, even absent a formal recommendation by the superintendent. The Board could then have either granted hearings or denied hearings and, if the Board denied hearings, Plaintiffs could have appealed under § 16-24C-12. In other words, state remedies that could have cured the alleged procedural deprivations were available to Plaintiffs. *See McKinney*, 20 F.3d at 1557; *Cotton*, 216 F.3d at 1331. As a result, they fail to state a claim for violation of their procedural due process rights. *See McKinney*, 20 F.3d at 1557. The court therefore **WILL GRANT** Defendants' motion to dismiss Count One for failure to state a claim and **WILL DISMISS** Count One **WITH PREJUDICE**.

15

2.  Count Four (Title VII)

The only other federal claim made in this case is Count Four, in which two of the plaintiffs—Ms. Beasley and Ms. Kennedy—assert that the School System and the Board discriminated against them based on their sex, in violation of Title VII, by requiring them to teach additional periods of instruction to virtual students without providing additional compensation. (Doc. 13 at 54–58 & n.5). Ms. Beasley and Ms. Kennedy allege that this caused a disparate impact on female teachers, who bear more household responsibilities and perform as caregivers for family members, because they had to spend their afternoons, evenings, and weekends working instead of performing their duties as family and household caregivers. (*Id.* at 54 ¶¶ 220–25, 56–57 ¶¶ 232–34).

The School System and the Board move to dismiss this claim on the grounds that Ms. Beasley and Ms. Kennedy have not stated a disparate impact discrimination claim because (1) a one-time action cannot be an "employment practice"; (2) Plaintiffs have not alleged how they were affected in ways that male teachers were not; and (3) even if Plaintiffs adequately alleged a disparate impact, the School System and the Board made the change to Plaintiffs' jobs to serve a legitimate, non-discriminatory business objective. (Doc. 18 at 17–20). The court agrees that Plaintiffs have not alleged facts that "raise a reasonable expectation that discovery will reveal evidence" that the COVID-19 protocols used during the 2020–2021

school year had a disparate impact on female teachers. *See Twombly*, 550 U.S. at 556. As a result, the court will not address the arguments about whether a one-time change can be an "employment practice" or whether a defendant's allegation of a business necessity can defeat a plaintiff's claim at the dismissal stage. *But see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (explaining that the burden-shifting framework employed in many employment discrimination cases "is an evidentiary standard, not a pleading requirement"); *Surtain v Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015).

Title VII makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). One way a plaintiff can establish a violation of Title VII is by showing that a neutral, facially non-discriminatory employment practice "visit[s] an adverse, disproportionate impact on a statutorily-protected group." *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1273 (11th Cir. 2000). This is called the "disparate impact theory." *See id.* Title VII expressly prohibits disparate impact discrimination, providing that "[a]n unlawful employment practice based on disparate impact is established under this subchapter only if . . . a complaining party demonstrates that a respondent uses a particular employment practice that causes a

17

disparate impact on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(k)(1)(A)(i). Ms. Beasley and Ms. Kennedy do not allege intentional discrimination, but instead expressly invoke the prohibition against disparate impact discrimination. (Doc. 13 at 57 ¶ 234; *see* doc. 21 at 27–31).

Ms. Beasley and Ms. Kennedy do not allege that the requirement that teachers teach additional periods of instruction to virtual students impacted male teachers any differently from female teachers *when at work*. Instead, they allege that requiring them to teach additional periods of instruction to virtual students had a disparate impact on them compared to male teachers because it kept them from performing caregiving duties, which male teachers allegedly do not have, *when off work*. (Doc. 13 at 54–58 & n.5). The disparate impact alleged is on the home lives of the teachers, not their professional lives.

But Title VII governs failing or refusing to hire, terminating, or discriminating against a person "with respect to [her] compensation, terms, conditions, or privileges *of employment*." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). And no case that this court has located has acknowledged a disparate impact claim arising from an impact on employees outside work. For example, in *Griggs v. Duke Power Co.*, 401 U.S. 424, 429–32, 436 (1971), the Supreme Court held that an employer's use of neutral, objective practices, procedures, or tests to make *promotion decisions* can support a disparate impact claim when those practices, procedures, or tests do not bear a

demonstrable relationship to successful performance of the job.  In *Connecticut v. Teal*, 457 U.S. 440, 448 (1982), the Supreme Court explained that Title VII and *Griggs* relate to "employment *opportunities*": "[Title VII] prohibits discriminatory artificial, arbitrary, and unnecessary barriers to employment that limit or classify applicants for employment in any way which would tend to deprive or tend to deprive an individual of employment opportunities."  (Cleaned up) (emphasis in original).  The Eleventh Circuit has been even more explicit.  In *In re Employment Discrimination Litigation Against the State of Alabama*, 198 F.3d 1305, 1312 n.11 (11th Cir. 1999), the Eleventh Circuit stated that "the disparate impact analysis can be used to challenge employment practices that have a disparate impact at any level of the employment structure, from hiring to promotions to levels of compensation."

Ms. Beasley and Ms. Kennedy's claim rests not on a disparate impact to their employment—the hiring, firing, or compensation, terms, conditions, or privileges of employment—but on a disparate impact to their personal lives.  *See* 42 U.S.C. § 2000e-2(a)(1).  Although they allege that most teachers in the School System are female, they also allege that *all* teachers in the School System—including the male teachers—were subject to the new job requirements and experienced the same impact to their hours and rates of pay.  The court therefore agrees with the School System and the Board that Ms. Beasley and Ms. Kennedy have not stated a claim of sex discrimination because they have not alleged how this new employment practice

19

affected their employment in ways that it did not affect male teachers.  The court **WILL GRANT** the motion to dismiss Count Four and **WILL DISMISS** the Title VII claim **WITH PREJUDICE**.

### 3.  Counts Two and Three (Breach of Contract and Quantum Meruit)

The remaining claims in this case assert breach of contract and quantum meruit.  (Doc. 13 at 45–53).  The court has jurisdiction over those claims based only on supplemental jurisdiction.  *See* 28 U.S.C. § 1367(a); (doc. 13 at 5 ¶ 17).  When a court "has dismissed all claims over which it has original jurisdiction," it may decline to exercise supplemental jurisdiction over the state law claims.  28 U.S.C. § 1367(c)(3).  Because the court has dismissed the only federal claims in this action, the court **WILL DECLINE** to exercise supplemental jurisdiction and **WILL DISMISS** Counts Two and Three **WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

### 4.  Motion to Amend

Plaintiffs have also moved to amend the amended complaint to add Ms. Warren as a plaintiff asserting Count Four.  (Doc. 30).  Given the court's ruling on Defendants' motions to dismiss, the court **WILL DENY** the motion to amend **AS MOOT**.

## III.    CONCLUSION

The court **WILL GRANT** the motions to dismiss filed by the School System, the Board, the Members, and Dr. Johnson and **WILL DISMISS** the federal claims asserted in Counts One and Four **WITH PREJUDICE**.  Given the dismissal of the federal claims, the court **WILL DECLINE** to exercise supplemental jurisdiction over the state law claims.  The court **WILL DENY AS MOOT** the motion to amend the complaint to add Ms. Warren as a plaintiff.

The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this April 26, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE